### FITCHBURG SAVINGS BANK *vs.* THOMAS RICE & others.

Worcester.    Oct. 4, 1877. — Feb. 27, 1878.    ENDICOTT & LORD, JJ., absent.

A memorandum of "F. & L. bonds as collateral," on a joint and several note, signed by one person as principal and another as surety, is not notice to the payee of any agreement between them that the principal would pledge the bonds named, nor a condition precedent to the liability of the surety that the payee should receive the bonds named as security.

In an action on a joint and several note, signed by one person as principal and another as surety, and payable to the order of a bank, upon which was the memorandum "F. & L. bonds as collateral," "F. & L. notes" being in fact deposited as security, it appeared that the treasurer of the bank, in reply to an inquiry by the surety "if the F. & L. bonds were deposited with the note," replied that they were. *Held*, that the surety was not discharged.

CONTRACT against Thomas Rice, William O. Brown and Daniel Wetherbee, three of the sureties on the following promissory note, signed by the persons named therein:

"Fitchburg, September 15, 1873.

"For value received, we, H. A. Blood as principal, E. P. Carpenter, Daniel Wetherbee, John H. Lockey, Thomas Rice and William O. Brown as sureties, jointly and severally promise to pay to the Fitchburg Savings Bank or order, twenty-five thou-

sand dollars on demand, with interest semiannually at the rate of eight per cent. per annum.

" $25,000, Framingham and Lowell Railroad bonds as collateral."

Writ dated February 14, 1877. Trial in this court, before *Morton, J.*, who reported the case for the consideration of the full court, in substance as follows:

On September 12, 1873, H. A. Blood made application in writing to the plaintiff for a loan of $25,000, "with the same amount of 8 per cent. bonds of Framingham and Lowell Railroad Company as collateral," and setting forth the names which appear in the note above. The investing board of the bank voted on September 15, 1873, to lend the persons whose names were given the amount applied for, " with $25,000 Framingham and Lowell Railroad bonds as collateral." At this time there were seven per cent. bonds, under seal, of the above-named railroad, secured by a first mortgage of the road and property of the company, and eight per cent. coupon notes of the company, not under seal, and unsecured. The money, for which the note in suit was given, was paid by the plaintiff on September 22, 1873; and, at or about the date of the application, Blood deposited with the plaintiff, as collateral security for the loan, twenty-five of the said railroad company's coupon notes, each of which was plainly marked on the back, " Framingham & Lowell Railroad Co. note," and no other security was delivered to the plaintiff. The assistant treasurer of the bank, who was its active manager, testified that the fact that notes instead of bonds had been deposited was not discovered until May, 1876.

There was also evidence that the notes, though at one time of equal market value with the bonds, were of much less value now. The evidence was conflicting on the question whether the notes were commonly called bonds, or whether they were always known as notes.

The defendant Brown testified as follows: " When I signed the note, I read the clause relating to collateral. I knew of the Framingham and Lowell Railroad bonds, and also of the Framingham and Lowell Railroad notes. In signing, I relied upon the fact that the bank would hold the $25,000 bonds as collateral. After signing, I went three times to the bank. I went

first a few days after I signed the note. I inquired of the treas-
urer of the bank about the bonds. I asked him if the Framing-
ham and Lowell Railroad bonds were deposited with the note.
He said they were, that I need not worry about it, as it was per-
fectly secured. In about a year and a half afterwards, I again
called at the bank and saw the treasurer. I again asked him
the same question. He asked me what I was making such a fuss
about it for. I said I wanted to be sure about it. He said the
bonds were there. I then asked him if he would not give me a
statement of the names of the parties on the note, with the col-
lateral. He said he would, and went into the back room and
brought me out this paper : ' Note for $25,000, dated September
15, 1873, and signed by H. A. Blood, E. P. Carpenter, Daniel
Wetherbee, John H. Lockey, Thomas Rice, William O. Brown.
$25,000 Framingham & Lowell R. R. Co.'s bonds collateral.'
He then said he hoped I would be satisfied now. I said I was.
I inquired again at the bank in the fall of 1876, before Blood
had failed, but when his circumstances began to be doubtful. I
then asked the treasurer if he would let me see the note and
bonds. He showed me the note, and then handed me the notes,
and said they were not exactly bonds, but were notes, but were
just as good. Blood was perfectly good when I signed the note,
and also when I inquired of the treasurer the first and second
times. Now he has failed, and we cannot collect of him. His
notes have gone to protest. Carpenter has failed now. He was
in good credit then. Wetherbee was good then, and now has
failed. Lockey was good then, but has now failed. My pur-
pose in going to the bank was to know if the bonds were there,
and if they were I felt safe, but, if they had been notes, I should
have taken steps to collect the note. The bonds are a good in-
vestment at par for 7 per cent. loan." On cross-examination
he testified : " It might have been two weeks after I signed the
note, that I first went into the bank. It did not come into my
mind at the second interview that I had some fears the collaterals
might be notes. I wanted to know the facts so as to act upon
them, and, if they were notes, I should have got Blood to pay.
I never heard of the notes being called bonds. I should think
I went in, the third time, about October or November. At the
second time, I had no fear they were notes, but wished to take

precaution." The defendants admitted that the statements of the treasurer were made in good faith, but contended, upon the evidence, that he was guilty of gross carelessness.

The defendant Rice testified as follows : " When I signed the note I knew about the Framingham and Lowell Railroad bonds and notes, and understood that the bonds were to be deposited with the bank. I relied upon the deposit of the bonds as my security. I read the memorandum on the note when I signed it, and should not have signed it without. On the first of last January, I had an interview with the bank officers at the bank. I first knew that the bank held notes and not bonds in December, 1876. I asked the treasurer if the bank had the $25,000 railroad bonds. He said it had. I asked to see them. He asked me what difference it would make if they were notes instead of bonds. I said all the difference in the world. I signed for bonds, and not for notes. I asked if he would let me see them. He did so reluctantly. I told him if he would give me the bonds and the note, I would give him the funds that day."

The defendants Rice and Brown also offered to prove that, at the time they signed the note as sureties, Blood agreed with them that he would deposit with the bank $25,000 of the mortgage bonds of the Framingham and Lowell Railroad Company as collateral security for the note ; but, as the defendants stated they did not expect to bring such agreement home to the knowledge of the officers of the bank, the judge refused to admit the evidence, and the defendants excepted.

The judge further ruled that the foregoing evidence would not justify a verdict for the defendants, or either of them, and, against the objection of the defendants, directed a verdict for the plaintiffs for the full amount due upon the note.

If the rulings were correct, judgment was to be entered on the verdict ; otherwise, the case was to stand for a new trial.

*G. F. Hoar & T. L. Nelson*, for the defendants.

*G. A. Torrey*, for the plaintiff.

SOULE, J. The memorandum on the note, " $25,000, Framingham and Lowell Railroad bonds as collateral," is capable of several interpretations, but cannot be construed as notice to the plaintiff of an agreement between the principal and sureties that he would pledge the bonds named as security for the note,

nor as annexing, to the absolute promise contained in the note, the condition precedent that the plaintiff should receive the bonds named as security. The plaintiff, therefore, was under no obligation to take care of the interests of the sureties by refusing to lend the money on the note and a different security from that named in the memorandum; nor did it lose any rights against them by failing to observe that the collaterals left were notes instead of bonds. It had a right to assume that all parties to the note were aware of the details of the transaction, and assented to what was done; or, more properly, that what was done was the act of all.

The answers given by the treasurer of the plaintiff to the inquiries of the defendant Brown did not release any of the sureties from their obligation to pay the note. The principle is well established, as contended by the defendants, that the surety is released by any false statement made by the creditor as to the existing condition of the debt, which puts him off his guard, and causes him to lose the opportunity to protect himself, although the statement is innocently made. *Baker* v. *Briggs*, 8 Pick. 122. *Carpenter* v. *King*, 9 Met. 511. But the facts do not bring this case within that principle. The treasurer of the plaintiff would naturally understand the inquiries of Brown to be directed merely to the point of ascertaining whether the plaintiff still held the securities which it took when the loan was made, or had surrendered them. Nothing in the form of the inquiry directed attention to the question whether the securities left were of the kind named in the memorandum or not. If Brown wished information on that point, he should have inquired more particularly. The questions were answered truly in the sense in which the treasurer had a right to understand them; and it does not appear that Brown intended them in any other sense. His testimony, therefore, that, if he had known that the collaterals were notes and not bonds, he should have taken steps to collect the note, has no bearing upon the rights of the parties.

The evidence offered by the defendants constituted no defence to the action, and the ruling at the trial was correct.

*Judgment on the verdict.*