PERSON DAVIS & others *vs.* GERMAN AMERICAN INSURANCE COMPANY.

Suffolk. March 12, 13. — June 28, 1883. DEVENS & W. ALLEN, JJ., absent.

A was insured against loss by fire on a house, by a policy of insurance payable in case of loss to B., who was in fact a mortgagee of the premises insured. After an alienation of the premises by A., and after an entry by B. for breach of condition of his mortgage, so that the policy, by its terms, had become void, the insurance company, at the request of B., and without asking or receiving any consideration, made an indorsement on the policy, which, after reciting that B. had entered for breach of condition of his mortgage, provided that the policy should attach and cover his interest as such; that the insurance as to the interest of the mortgagee only therein should not be invalidated by any act or

neglect of the mortgagor; and that, whenever the insurer should pay the mortgagee any sum for loss under the policy, and should claim that, as to the mortgagor or owner, no liability existed, the insurer should be subrogated to the legal rights of the mortgagee under all securities held as collateral to the mortgage debt. *Held,* that the mortgagee could not maintain an action against the insurer for a loss occurring after the indorsement was made.

CONTRACT upon two policies of insurance, dated respectively October 28 and December 1, 1876, for the term of three years, whereby the defendant, a New York corporation, insured, against loss by fire, Emma L. Putney, on her dwelling-house in Cambridge, "payable in case of loss to Davis, Taylor and Demmon [the plaintiffs] to extent of their interest." Trial in this court, before *W. Allen,* J., who reported the case for the determination of the full court, in substance as follows:

The policies contained among others the following condition: "If the property be sold or transferred, or upon the passing or entry of a decree of foreclosure, or upon a sale under a deed of trust; or if the property insured be assigned under any bankrupt or insolvent law, or any change take place in title or possession (except in case of succession by reason of the death of the assured), whether by legal process, or judicial decree, or voluntary transfer or conveyance; then and in every such case this policy shall become void."

On July 26, 1877, Putney sold and conveyed the property to one Henry Pearson, by an absolute conveyance in fee simple; and Pearson conveyed the same, by a similar conveyance, to one Emerson.

On June 8, 1878, the plaintiffs, who held a mortgage on the land on which was the house insured, entered and took possession, according to law, for breach of the condition of their mortgage, and caused a certificate of their entry to be recorded in the registry of deeds on June 11, 1878.

On December 21, 1878, the plaintiffs informed the defendant's agents of the entry, and these agents made the following indorsements upon the policies, at the plaintiffs' request, for which no consideration was received or asked:

"Boston, December 21, 1878.    Davis, Taylor and Demmon, the parties to whom this policy is payable in case of loss, being mortgagees, have entered for breach of the conditions of their said mortgage.

"It is understood and agreed that this policy shall attach and cover their interest as such.

"It is hereby agreed that this insurance, as to the interest of the mortgagees only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy, nor for non-occupation of the premises.

"It is further agreed that the mortgagees shall notify said company of any change of ownership or increase of hazard which shall come to their knowledge, and that every increase of hazard not permitted by the policy to the mortgagor or owner shall be paid for by the mortgagees on reasonable demand, according to the established scale of rates, for the use of such increased hazard during the current year.

"It is also agreed that whenever the company shall pay the mortgagees any sum for loss under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, it shall at once be legally subrogated to all the legal rights of the mortgagees under all the securities held as collateral to the mortgage debt, to the extent of such payment; or, at its option, may pay to the mortgagees the whole principal due or to grow due on the mortgage, with interest, and shall thereupon receive a full assignment and transfer of the mortgage and all other securities held as collateral to the mortgage debt; but no such subrogation shall impair the right of the mortgagees to recover the full amount of their claim."

At the time of this transaction, the plaintiffs knew of the conveyance by Putney, but, not understanding that it was of any consequence as affecting their rights, did not inform the defendant or its agent thereof; and neither the defendant nor any of its agents had any knowledge of such alienation or conveyance until after the loss by fire, which occurred on February 21, 1879.

Upon this evidence, the defendant contended that the plaintiffs were not entitled to recover; and asked the judge so to instruct the jury. The judge declined so to do; and the jury returned a verdict for the plaintiffs. If, upon the evidence, the plaintiffs were entitled to recover, judgment was to be entered on the verdict; otherwise, for the defendant.

*J. H. Benton, Jr.*, for the defendant.

*J. L. Thorndike*, for the plaintiffs.

HOLMES, J.    The plaintiffs rely upon an indorsement of a policy originally issued to their mortgagor, but made payable in case of loss to them to the extent of their interest.    This indorsement appears to us to have been framed upon the notion that a breach of condition and entry had transferred the legal title to the mortgagees for the first time, and that therefore the case resembled a sale of the insured premises, and a transfer of the policy to the purchaser.    The fact that this notion was entertained, if established, will settle the nature of the interest to which the indorsement refers, by showing the sense in which the parties used words capable of a broader meaning.    It is therefore necessary to examine the structure and language of this addition to the policy.

The indorsement begins with the statement that the mortgagees have entered for breach of condition, and this statement seems to be made and placed where it is, as the ground and reason for the agreements which follow.    Then comes an agreement that "this policy shall attach and cover their [the mortgagees'] interest as such."    These words do not seem to look primarily to a waiver of a supposed breach of condition, but rather to mean that the promise previously made shall enure to the mortgagees' benefit in respect of the interest which they are supposed to have acquired by entry, as it previously attached to the same interest in the hands of the mortgagor.

The indorsement next agrees that "this insurance, as to the interest of the mortgagees only therein, shall not be invalidated by any act or neglect of the mortgagor," &c.    This again evidently assumes that the undertaking to the mortgagees is still only derivative, and cut out of the insurance of the mortgagor's interest.

Finally, there is an agreement for subrogation if "the company shall pay the mortgagees any sum for loss under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed," which proceeds on the same assumption as the rest.

The conclusion which we thus draw from the construction of the indorsement as to the notion upon which it is framed, is

fortified by extrinsic facts.   The defendant is a New York company, and the indorsement is drawn in what seems to be an established New York form.   *Hastings* v. *Westchester Ins. Co.* 73 N. Y. 141.   The language of more than one New York decision would appear at first sight to countenance the view in question.   "After forfeiture and condition broken, the mortgagee, if he be in possession, is considered as having the legal estate."   *Bolton* v. *Brewster*, 32 Barb. 389, 395.   *Van Duyne* v. *Thayre*, 14 Wend. 233, 236.   *Phyfe* v. *Riley*, 15 Wend. 248, 254. It is true that in *Hastings* v. *Westchester Ins. Co.* a very similar clause was differently construed, but the first two sentences of the present indorsement were absent in that case.

The importance of the foregoing discussion lies in its effect upon the interpretation of the words above quoted, "this policy shall attach and cover their [the mortgagees'] interest as such." For we are confirmed in the opinion that the interest referred to was not the hitherto uninsured interest which the mortgagees had always had from before the date of the policy alongside of the mortgagor's interest which the policy covered, but was the same, or a part of the same, interest previously insured, and now supposed to be transferred from the mortgagor to the mortgagees.

If this and this alone is the interest referred to, the plaintiff's case is at an end, because the breach of condition and entry had not the supposed effect, and because further the mortgagor had no interest at the date of entry, she having alienated it before that time.

If however the indorsement is to be construed more broadly than is quite consistent with its words, and is to be taken as promising to insure the mortgagees' interest generally, which had been outstanding but uninsured up to that date, it equally fails to give any rights to the plaintiffs, because it is without consideration.   In this view, there is no analogy to the case of a transfer of premises and policy.   When that takes place, the same interest continues to be insured, and the substitution of parties in the policy can be reconciled with the doctrine of consideration in more ways than one.   But the indorsement worked no substitution of parties.   The mortgagor was not a party to the transaction.   Whatever rights she had before, she retained after

it, and is contemplated as retaining by its terms. The whole argument for the mortgagees must be that, by Massachusetts law, they already had such a contractual or quasi contractual relation with the defendant under the policy, by reason of its being made payable to them in case of loss to the extent of their interest, that the discharge of it was sufficient consideration for a new contract, with different terms, as in other cases of substituted contracts.

But this argument is unsound. In the first place, there is no substitution of contracts. The purport of the policy and indorsement, taken together, upon the construction of the latter which we are now assuming, is that the original promise to pay the mortgagees in case of loss upon the mortgagor's interest is kept on foot, and that there is added to it a further promise to pay any loss upon the mortgagees' interest as well. In the next place, even if it could be said, with technical truth, that the indorsement contained the whole and only promise to the mortgagees, and was substituted for that on the face of the policy, still we should read it as embracing the whole of the original promise, and adding the further undertaking, just mentioned, to pay any loss on the mortgagees' interest in the property.

Taking it this way, then, and assuming that the plaintiffs stand in as good a position as if they were the original insured, we think the objection would remain that no consideration is shown. For, without disputing that one contract may be substituted for another, even when the consideration is executed, by way of accord and satisfaction, the form of such a transaction cannot be made to cover what is in substance adding a new and gratuitous promise to an existing agreement upon executed consideration. Were this not so, we should probably have seen attempts to avoid the well-settled doctrine that a present debt will not support a promise to pay in futuro (*Hopkins* v. *Logan*, 5 M. & W. 241) by simply applying a different form of words and calling the new promise a substituted contract. For that presents the converse case where the assumption of the less burdensome obligation to pay in future is no consideration for the discharge of the more burdensome one to pay now, and where, therefore, the discharge being

void, the promise founded upon it is void, for that reason if not for others.

In *Hastings* v. *Westchester Ins. Co.* 73 N. Y. 154, above referred to, where this clause was treated by a majority of the court as being in substance a new policy issued to the mortgagees, it is suggested by one of the justices that the stipulation for subrogation in certain cases, upon payment, to the legal rights of the mortgagees under their securities, to the extent of such payment, is the consideration. But apart from any other objections to this view, it appears to us that this is a wholly subordinate provision, attached to a contract assumed to derive its validity from other sources, and that it can no more be regarded as the conventional inducement of the defendant's undertaking, by a fair construction of the instrument, than the requirement that the mortgagees shall notify the company of any change of ownership, &c. can be. Of course, if we look outside the paper, we know that contracts of insurance are not in fact, and do not purport to be, founded on such casual incidents of performance on the insurer's part.

For these reasons, in the opinion of the majority of the court, the defendant is entitled to judgment. It is therefore unnecessary to consider how far the Massachusetts cases have gone with regard to the legal standing of mortgagees under a policy issued to their mortgagor, but made payable to them in case of loss to the extent of their interest.

*Judgment for the defendant.*