ANTONELLI CONSTRUCTION CO., INC. *vs.* THE AETNA
CASUALTY AND SURETY COMPANY.

Worcester.    April 3, 1968. — June 7, 1968.

Present: WILKINS, C.J., WHITTEMORE, KIRK, SPIEGEL, & REARDON, JJ.

*Surety.   Release.*

Evidence warranted, but did not require, a finding that one, who had
   become an uncompensated surety on an agreement by an electrician to
   indemnify a bonding company with respect to a bond issued by it
   conditioned on performance by the electrician of the electrical sub-
   contract on a certain building project, and had deposited savings bank
   books with the bonding company as security, and who subsequently,
   at the request of the bonding company, furnished to it written evidence
   of complete performance of the subcontract by the electrician and
   thereupon obtained return of the bank books, was released by the
   bonding company from liability to it in consideration of furnishing
   the evidence of performance by the electrician; and warranted, but
   did not require, a finding that the bonding company released the
   surety by so treating him that he forbore obtaining security from the
   electrician to protect himself against action by the bonding company.

CONTRACT.   Writ in the Superior Court dated August 17,
1964.

The action was heard by *DeSaulnier,* J.

*Edward O. Proctor* for The Aetna Casualty and Surety
Company.

KIRK, J.   Antonelli, general contractor for certain im-
provements at Fitchburg State Teachers College, brought
this action of contract against Aetna as surety on the per-
formance bond of Acme Electric Contractors Co., Inc., a
subcontractor.   Under G. L. c. 231, § 4B, inserted by
St. 1964, c. 696, Aetna impleaded as third party defendants
Acme, Charles Beike, and Sophie Beike, who had executed
an agreement to indemnify Aetna on the bond.   The case
was referred to an auditor, whose findings were not to be
final.   Thereafter, the case was heard by a judge sitting
without jury who found for the plaintiff Antonelli against

Aetna, for Aetna as third party plaintiff against Acme, and for the third party defendants Charles Beike and Sophie Beike. The case is before us on Aetna's exceptions to rulings made by the judge and to his denial of Aetna's requests for rulings of law.[1]

We summarize the evidence before the judge including the auditor's report. On April 14, 1961, Antonelli signed a general contract for fire protection improvements at Fitchburg State Teachers College. The subcontract for electrical work was awarded to Acme, the low bidder. Charles Beike was formerly the president, treasurer, and chief stockholder of Acme. In 1960, he transferred his interest in the corporation to his son John. Sophie Beike is Charles's wife and John's stepmother. Antonelli required that Acme give a performance bond in the sum of $7,775 with a suitable surety. Thereafter Acme executed an "Application for Contract Bond and Agreement of Indemnity" with Aetna. Aetna also required that Charles and Sophie sign the agreement as "indemnitors," thus jointly and severally joining in the agreement. Charles also put up savings bank books for more than $7,775, jointly owned by Sophie and him, as security to cover the bond. Aetna issued the bond.

Electrical work under the subcontract was performed by Acme between April, 1961, and January, 1962. On January 10, the work was approved by the architect and, with reservations, by an electrical inspector. On January 18, the work was accepted by the Director of Building Construction. On February 21, Antonelli notified Acme that the project had been completed and accepted by the Department of Building Construction. Thereafter Charles requested Aetna to release his bank books. Aetna requested a letter showing

---

[1] Based upon a stipulation that the dispute between Aetna and Antonelli has been settled, Aetna has waived its exceptions in the action brought against it by Antonelli.

Eight of Aetna's nine requests for rulings against the third party defendants were denied. They may be considered in three categories: (1) Rulings that the evidence required a finding for Aetna. (2) Rulings that the evidence did not warrant a finding for Charles or Sophie on some essential subsidiary question of fact. (3) Rulings that the agreement signed by Charles and Sophie precludes any finding of their release or an estoppel of Aetna as against them.

that the job was complete and that Acme had paid its suppliers. Charles furnished letters to that effect from Antonelli and the suppliers. Aetna returned the books. Charles acted in good faith. [Charles did not hear anything further from Aetna until after the present action by Antonelli against Aetna was begun. Acme had gone out of business before the commencement of the action.] [2]

In January and February, 1963, latent defects were discovered in the work done under the subcontract. Also part of the work required by the specifications had not been done. On February 7, 1963, at a meeting attended by officials of the Commonwealth, Antonelli, and John Beike, Acme was requested to complete the work beginning on February 18. John replied that the work had been done according to the specifications, but Acme returned to the job on February 18 and did work until February 22. On that date, after consulting his father and an attorney, John ordered Acme's men off the job. Acme did no more work. Antonelli notified Aetna of the difficulty and hired an electrical contractor to do the corrective work, which proved to be extensive and cost more than the amount of the bond. The auditor concluded his report with the statement, "I find . . . unless the law requires otherwise that Aetna cannot recover from Charles Beike or Sophie Beike."

The judge prefaced his findings of fact and rulings of law with the statement: "The Court finds that none of the evidence introduced at the trial was sufficient to overcome the facts found by the Auditor and therefore adopts as the facts of the case the facts found in the Auditor's Report." See *Devine* v. *Zoning Board of Appeals of Lynn*, 332 Mass. 319, 321. He then ruled "as a matter of law that Aetna did release its claim against Charles Beike" when it returned the bank books to him. The express language, in context, does not permit us to disregard the form of this conclusion and consider it a finding of fact. See *Weismann* v. *Snyder*, 338 Mass. 502, 505. It is, in essence, a ruling that the

---

[2] The matter in brackets was testified to before the judge but was not stated in the auditor's report.

evidence did not warrant a finding for Aetna. See *New England Structural Co.* v. *Everett Distilling Co.* 189 Mass. 145, 151, 154. This ruling cannot be sustained.

A surety may be discharged from his obligation if the discharge is supported by consideration. Conceivably the judge could have found that Aetna released Charles in consideration of his furnishing, at Aetna's request, the necessary written evidence of completion of Acme's contract. The evidence did not, however, require a finding that these documents were "bargained for and given in exchange for" the release. Restatement: Contracts, § 75 (1). See *Davis* v. *German Am. Ins. Co.* 135 Mass. 251, 257; Corbin, Contracts, § 151. It was error to so rule. A finding should be made on either this question or the question next discussed.

An uncompensated surety, such as Charles, is discharged if the creditor (here Aetna) promises to release him or to look solely to the principal for payment and the surety is thereby induced to neglect to secure himself as he otherwise might. *Baker* v. *Briggs*, 8 Pick. 122, 131. *Harris* v. *Brooks*, 21 Pick. 195, 196. He is likewise discharged if the creditor informs him that the debt is paid and he in consequence loses the opportunity to protect himself by obtaining security. *Carpenter* v. *King*, 9 Met. 511, 517. *Fitchburg Sav. Bank* v. *Rice*, 124 Mass. 72, 76. *Way* v. *Dunham*, 166 Mass. 263, 264. The *Harris* case has been widely cited and seems to have become something of a leading case establishing this rule. *Matthews* v. *Everett*, 84 Ga. 472, 475–476. *Wolf* v. *Madden*, 82 Iowa, 114, 117. *Webber* v. *Alderman*, 102 Mich. 638, 639–640. *West* v. *Brison*, 99 Mo. 684, 693. *McAllister* v. *Pitts*, 58 Neb. 424, 427.

In short, the rule is that an uncompensated surety is discharged if the creditor treats him in such a way that he is reasonably induced not to secure himself. Whether the rule now applies to compensated sureties we do not decide. See *Bayer & Mingolla Constr. Co. Inc.* v. *Deschenes*, 348 Mass. 594, 598. We think that the return of the bank books to Charles, in the particular circumstances, was the equivalent of a statement by Aetna to him that Acme's obligation

had been fulfilled and that Aetna no longer looked to Charles for payment. The sole remaining subsidiary question of fact is whether Charles, in consequence of Aetna's return of the bank books, forbore from obtaining security from Acme against further action by Aetna against him. This question of fact is one to which Charles obviously could have testified; it is also one which conceivably could be resolved by an inference drawn by the judge from all the evidence. The permissible inference could be drawn in favor of either party. The ruling of the judge, however, imports that the inference could not be drawn in favor of Aetna. This was error. "The drawing of permissible inferences in an action at law is a question of fact; it is a function of the fact finding tribunal and not of this court on review of questions of law." *Commercial Credit Corp.* v. *Commonwealth Mortgage & Loan Co. Inc.* 276 Mass. 335, 340. The case must be remanded for resolution of this question or, as earlier stated, of the question of consideration for Charles' discharge.

The same reasoning applies to the question of Sophie's liability to Aetna. It is not clear whether Charles was acting on her behalf as well as his own when he requested the release of their jointly held bank books. Nor is it clear that Sophie was aware of Aetna's actions. Further findings are required on these questions.

It is clear from what we have said that there was evidence which would support a finding for either party. Therefore, all of Aetna's requests for rulings in the first two categories were properly denied.[3] The other requests, which were based on the indemnity agreement, were also properly denied. The agreement does not purport to preclude discharges of the type claimed by Charles and Sophie.

The case must be remanded for further findings and, if necessary, for further hearing to make such findings.

*So ordered.*

---

[3] See fn. 1.