EASTBURN HASTINGS et al., Executors, etc., Respondents, *v.* THE WESTCHESTER FIRE INSURANCE COMPANY, Appellant.

Defendant issued a policy of fire insurance to S. upon her dwelling-house; the policy contained a clause declaring in substance that in case of other insurance the insured could only recover upon the policy its proportionate share of any loss.    Plaintiffs held a mortgage upon the premises and subsequent to the issuing of the policy defendant made an indorsement thereon to the effect that a loss, if any, was payable to plaintiff, and annexed thereto a "mortgage clause," in substance, that the insurance as to the interest therein of the mortgagee only, should not be invalidated by any act or neglect of the mortgagor or owner; and that whenever the company should pay the mortgagee any sum for loss, claiming that as to the mortgagor or owner no liability therefor existed, the com-

pany should be subrogated to all the rights of the mortgagee in any securities held for the mortgage-debt, not affecting, however, the right of the mortgagee to recover the whole of his claim; or that the company might, at its option, pay the whole of said claim and take an assignment at the time of the issuing of the policy and of the indorsement. S. had other insurance upon the building, of which plaintiffs and defendant were ignorant. In an action upon the policy, *held,* that the mortgage clause operated as an independent insurance of the mortgagee's interest; it gave them the same benefit as if they had taken out a separate policy, free from the conditions imposed upon the owner and making them responsible only for their own acts; and that, therefore, the clause of the policy limiting defendant's liability in case of other insurance did not apply, as the mortgagees had procured no other insurance, and plaintiffs were entitled to recover the whole of a loss, without regard to the additional insurance procured by S.

Also *held,* that a provision in the "mortgage clause" requiring the mortgagees to notify defendant of any change of ownership or increase of hazard, as soon as it came to their knowledge, was not inconsistent with, and did not affect, the interpretation so given to said clause.

By the policy a loss was made payable sixty days after due notice and proof thereof. *Held,* that plaintiffs were entitled to interest after the expiration of sixty days from time of furnishing proof of loss, not from the time the amount of loss was adjusted and settled.

(Argued February, 18 1878; decided March 26, 1878.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, in favor of plaintiffs, entered upon a case submitted under sections 1279, 1280 and 1281 of the new Code. (Reported below, 12 Hun, 416.)

The facts stated in the submission are substantially as follows: The plaintiffs, as the surviving trustees and executors of the will of George Hastings, deceased, were on the 8th day of May, A. D. 1875, the owners of a bond and mortgage executed by Sarah C. Stout and Thomas H. Stout, her husband, for the sum of $14,000; the mortgage covering premises in the village of Irvington, Westchester county, New York. Defendant, on said 8th day of May, 1875, issued to Mrs. Stout its policy of insurance for the sum of $10,000, for a term of three years, on her dwelling-house, upon said mortgaged premises, which policy contains this clause: " Other insurance permitted." Also the follow-

ing condition numbered nine : " In case of any other insurance upon the property hereby insured, whether made prior or subsequent to the date of this policy, the assured shall be entitled to recover of this company no greater proportion of the loss sustained than the sum hereby insured bears to the whole amount insured thereon, whether such other insurance be by specific or by general or by floating policies." On September 1, 1876, with the consent of Mrs. Stout, and at the request of the plaintiffs, the defendant indorsed upon said policy the following words : " Loss, if any, payable to Maria L. and Eastburn Hastings, trustees and mortgagees," and at the same time annexed to said policy the following clause, known as the "mortgage clause": "It is hereby specially agreed that this insurance, as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy. It is also provided and agreed that the mortgagee shall notify the company of any change of ownership or increase of hazard not permitted by this policy to the mortgagor or owner as soon as the same shall come to his or her knowledge, and shall, on reasonable demand, pay the additional charge for the same, according to the established scale of rates, for the time such increased hazard may be or shall have been assumed by this company, during the continuance of this insurance. And it is further agreed that whenever the company shall pay the mortgagee any sum for loss under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, said company shall at once be legally subrogated to all the rights of the mortgagee under all the securities held as collateral to the mortgage debt, to the extent of such payment, but such subrogation shall not impair the right of the mortgagee to recover the full amount of his claim, or at its option said company may pay to the mortgagee the whole principal due or to grow due on the mortgage, with the interest then accrued, and shall thereupon receive a full assignment and

transfer of the mortgage, and all other securities held as collateral to the mortgage debt.

"GEO. R. CRAWFORD,

" *Secretary.*"

The policy was thereupon delivered to the plaintiffs. On the 20th day of October, 1876, said dwelling was destroyed by fire. Due notice of the loss was given, and proof of loss, as required by said policy, was made and delivered to said defendant on the 14th day of November, 1876, and arbitrators were on the 11th day of December, 1876, chosen to adjust the amount of loss, difference having arisen as to amount of such loss. On the 18th day of January, 1877, the amount of the loss and damages was adjusted at $9,832.52. At the time of the issuing of the said policy, and of the indorsements and the delivery of the same to the plaintiff, said Sarah C. Stout had obtained another policy of insurance upon the property in the amount of $4,000, issued by the Lycoming Insurance Company, containing a clause as to contribution in case of other insurance, the same as the one issued by the defendant, but the fact of such insurance was not known to either the plaintiffs or defendant until after the said fire, and the said policy was not payable to plaintiffs. The amount of the loss as adjusted, together with the value of the land covered by the mortgage, would not more than pay the plaintiffs the amount of their mortgage, and upon a foreclosure would not realize that amount. The plaintiffs claimed the whole amount of said loss as adjusted, $9,832.52, with interest thereon from January 14, 1877, said date being sixty days after proof of loss, was delivered to the defendant. Defendant claimed that by reason of the insurance in the Lycoming Insurance Company it was only liable for ten-fourteenths of the loss ; also, that under its policy the amount due was not payable until sixty days after the adjustment of the loss. The General Term sustained plaintiffs' claims.

*C. Frost,* for appellant. When the policy was issued the title of the owner of the property alone was insured. (*Grosvenor*

v. *At. Ins. Co.*, 17 N. Y., 391; *Crone* v. *Niagara Ins. Co.*, 60 id., 619.) The indorsement that the loss should be paid to the mortgagee did not change the person interested or property insured. (*Merwin* v. *Star F. Ins. Co.*, 7 Hun, 659, 661; May on Ins., 459, §§ 378, 379; Flanders on F. Ins., 441, 442; *Frink* v. *Hampden Ins. Co.*, 31 How. Pr., 30.) The policy in suit never ceased to be an insurance of the mortgagor's interest. (*Springfield Ins. Co.* v. *Allen*, 43 N. Y., 389, 393, 397.) The provision in the mortgagee clause for subrogation showed that the insurance continued to be that of the owner's interest. (*Kernochan* v. *Bowery Ins. Co.*, 17 N. Y., 418; *Bradford* v. *Greenwich Ins. Co.*, 8 Abb., 261; *King* v. *State M. Ins. Co.*, 7 Cush., 1; *Norwich Ins. Co.* v. *Booner*, 52 Ill., 442; *Sussex Co. M. Ins. Co.* v. *Woodruff*, 2 Dutch., 541; Flanders on F. Ins., 360–361; *Excel. F. Ins. Co.* v. *Royal Ins. Co.*, 55 N. Y., 343; *Ulster Co. Savings Inst.* v. *Decker*, 11 Hun, 515; *N. B. and M. Ins. Co.* v. *L. L. and G. Ins. Co.*, 5 L. R. Div., 1 Ch., 569; *Home Ins. Co.* v. *Balt. W. Co.*, 6 Ins. L. J., 39; *Mayor* v. *Han. F. Ins. Co.*, 39 N. Y., 45.)

*D. Noble Rowan*, for respondent. The owner of the property insured could not bring this action against the defendant. (*Ripley* v. *Astor Ins. Co.*, 30 N. Y., 136; *Frink* v. *Hampden Ins. Co.*, 31 How., 30; 45 Barb., 384.) By making the loss, if any, payable to the mortgagee and annexing the mortgagee clause the policy was in effect the same as if the mortgagee had insured his interest. (*Excel. F. Ins. Co.* v. *Royal Ins. Co.*, 55 N. Y., 343.) The mortgagee cannot claim the benefit of an insurance effected by the mortgagor. (*McDonald* v. *Black*, 20 Ohio, 185; *Col. Ins. Co.* v. *Lawrence*, 1 Ben. Ins. Cas., 512; *Wyman* v. *Proper*, 36 Barb., 368; *Carpenter* v. *Prov. Ins. Co.*, 16 Pet., 495.) Defendant could sue the Lycoming company and restrain it and compel a contribution towards its liability. (*Hand* v. *W'msburgh Ins. Co.*, 57 N. Y., 48; *Morrell* v. *Irving Ins. Co.*, 33 id., 453; *Cronin* v. *Ky. Ins. Co.*, 15 B. Mon., 432.)

MILLER, J.  A contract of insurance stands upon precisely the same basis as any other agreement and, in accordance with a general rule, must be interpreted according to its purport in connection with the facts and circumstances which attend its execution.  The main object should be to carry out and to give effect to the intention of the parties. In the case presented for adjudication, it was the evident purpose of both parties to secure the plaintiffs as mortgagees against any loss by reason of a destruction of the buildings situated upon the mortgaged premises.  The mortgage had been executed by the owner of the premises some time prior to the issuing of the policy to said owner to secure her against loss and damage by fire for the period of three years, and by the policy other insurance was allowed.  Subsequently, with the consent of the owner, the defendant agreed, by an indorsement upon the policy, that the loss, if any, should be payable to the plaintiffs, and a mortgage clause was annexed to the policy, by which it was agreed that the insurance, as to the interest of the mortgagee only therein, should not be invalidated by any act or neglect of the owner of the property insured, nor by the occupation of the premises for purposes more hazardous than was permitted by the policy.  It also contained, among others, a further provision, to the effect that whenever the company should pay the mortgagee any sum for loss, and claim that as to the mortgagor or owner no liability therefor existed, it should at once be subrogated to all the rights of the mortgagee under all the securities held as collateral to the mortgage debt to the extent of such payment; but that such subrogation should not impair the right of the mortgagee to recover the full amount of his claim ; or, at its option, said company might pay to the mortgagee the whole amount of the mortgage and receive a full assignment thereof.

At the time when the contract, expressed in the entry upon the policy of insurance, and in the stipulation to which we have referred, was made, it appears to have been quite obvious that the design of the parties was to secure to the plaintiffs

the amount named in the policy of insurance in case of loss by fire, and that the defendant should pay the whole amount of any loss, with the right of subrogation, in the place of the plaintiffs, in case of the happening of the contingency stated therein.   It is claimed, however, by the appellant's counsel, that the policy was an insurance of the interest of the owner of the property solely ; that such owner was the assured, and the defendant only agreed to make good the loss of such owner ;  and inasmuch as another policy existed at the time, in favor of such owner, although entirely unknown to both the plaintiffs and the defendant, the latter was entitled to the benefit of the condition contained in its policy, which declares that in case of any other insurance, whether prior or subsequent to the date of the policy, the assured was entitled to recover no greater proportion of the loss sustained than the sum insured bears to the whole amount insured thereon.

This position cannot, I think, be maintained.   Prior to the time when the mortgage clause was entered upon the policy, the word " assured " referred to the owner, and it is hardly to be assumed that the mortgagees would have accepted such a provision if there was any reason to suppose that they would be affected by any prior insurance.   They would, no doubt, have demanded a separate policy as mortgagees, instead of trusting to the hazard and uncertainty of pursuing a remedy upon a policy of which they had no knowledge, and against a company to which they were strangers, and in regard to whose responsibility they had no information whatever.   The legal effect of the mortgage clause was, that the defendant agreed that in case of loss it would pay the money directly to the mortgagees ; and they were thus recognized as a distinct party in interest.   It created a new contract from that time with the mortgagees, the terms of which most clearly indicate that it had no relation to the application of the condition referred to.   The insurance had been to the owner, and the additional provisions, which were incorporated in the policy by the mort-

gage clause, created a distinct contract with the mortgagees. It was an independent agreement partaking in no sense of the character of an assignment of a policy of insurance, but one in which the mortgagees were recognized as a separate party, having distinct rights, and entitled to receive the full amount of insurance money, without any regard whatever to the owner of the property. The meaning of the word " assured " has not been changed by the addition of the mortgage clause, the object of which evidently was to protect the mortgagees against the effect of the provision in which that word is employed.

The interest of the latter was distinct and separate when this change in the policy was made, and the intention of the parties was, beyond question, to insure the plaintiffs under a new contract. Any different interpretation would lead to great injustice, and place the mortgagees under the control and at the mercy of the owner, by changing the character of the defendant's liability, which might operate to prevent the indemnity which the defendant intended to provide. If the condition referred to was in force either before or after the arrangement, the owner might effect other insurance, and thus jeopard the rights, if not entirely control the security, of the plaintiffs. The holder of a mortgage, who had thus been secured, would have but slender security if a double insurance could be effected, without his knowledge or consent, either before or after the contract had been made, and his contract thus jeoparded. If before the arrangement with the defendant, as was the case here, the contract created by the mortgage clause would be seriously affected, and the security intended to be furnished thereby very much impaired. There is no valid ground for the assumption that either party intended any such result or expected that any other insurance could interfere with the condition and terms of the contract into which they had entered under the mortgage clause. It is conceded that the object of this change of the policy was to protect the mortgagees, and it would fail in securing such protection if it rested in the owner's power

to interfere with and deprive the mortgagees of their rights. The just and reasonable interpretation of the provision, in accordance with the rule laid down under the facts presented is, that the legal force and effect of the policy shall not be weakened or impaired. When it provides that it "shall not be invalidated," it means that it shall continue valid for the full amount named, despite of any act or neglect of the owner or mortgagor. Any other construction would be loose, indefinite, unsatisfactory, and render the clause in question of but comparatively little value. The contract incorporated in the policy of insurance by the mortgage clause is not the ordinary case of an assignment of the interest of the owner in the policy to the mortgagee, where the owner still retains control over the property, and may affect or destroy the rights of the assignees, or where the loss is payable to the mortgagee, or to some other person, and it is held that the contract is with the mortgagor and the mortgagee cannot recover in case of a breach of the conditions of the policy by the mortgagor. (*Grosvenor* v. *The Atlantic Fire Ins. Co. of Brooklyn*, 17 N. Y., 391; *The Buffalo Steam Engine Works* v. *Sun Mutual Ins. Co.*, id., 401.) Where the assignment is made by the mortgagor to the mortgagee, as collateral to the mortgage, the owner or mortgagor still, as a general rule, retains title and possession; and as his interest continues the same as previously, unless some new contract is entered into, no reason exists why the contract contained in the policy should be changed. The consent to the assignment alone, which is usually required by the by-laws of an insurance company, is not enough to divest the owner and mortgagor of his right to control, or to deprive the company of the benefit of any of the conditions of the policy; and it does not thereby waive a performance of the conditions of the policy which are regarded as material at the time of its delivery. In case the loss is payable to a third person, who has no interest in the property insured, but only claims the insurance as collateral security for liabilities incurred prior to the insurance, the latter only can main-

tain an action on the policy as an appointee of the owner who is authorized to receive the same. (*Frink* v. *Hampden Ins. Co.*, 31 How. Pr., 30; 45 Barb., 384; *Case* v. *Niagara Fire Ins. Co.*, 3 N. Y. S. C. [T. & C.] R., 33, 39; *Merwin* v. *Star Fire Ins. Co.*, 7 How., 659; affirmed in Court of Appeals; May on Fire Ins., 460 ; Flanders on Fire Ins., 441, 442.)

The rules laid down in the authorities cited have no application, however; to a case where a provision has been inserted in the policy which places the mortgagee upon another and a different footing from that of a mere assignee or appointee to receive the loss. The mortgage clause was agreed upon. for this very purpose, and created an independent and a new contract, which removes the mortgagees beyond the control or the effect of any act or neglect of the owner of the property, and renders such mortgagees parties who have a distinct, interest separate from the owner, embraced in another and a different contract. The tendency of the recent cases is to recognize these distinctions, and thus protect the rights of the mortgagee when named in the policy, and the interest of the owner and of the mortgagee are regarded as distinct subjects. of insurance. (*Excelsior Fire Ins. Co.* v. *Royal Ins. Co.*, 55 N. Y., 343; *Springfield Ins. Co.* v. *Allen*, 43 id., 392.)

A point is made as to the effect to be given to the second. paragraph of the mortgage clause, and it is claimed that this. clearly indicates that it was not intended by such clause to change the policy into an insurance of the mortgagees upon their interest, because it provides that the mortgagees shall notify the company of any change of ownership or increase of the hazard not permitted by the policy to the mortgagor or owner, as soon as the same came to the knowledge of the mortgagees. I do not think that such an inference can be drawn. from the provision referred to. While it recognizes a change of ownership and an increase of hazard by the mortgagor or owner, it does not conflict with a separate and independent, insurance of the interest of the mortgagees. Such a provision is not inconsistent with the existence of a distinct insurable interest of the mortgagees, or adverse to the manifest

intention of the parties to protect the rights of the mortgagees, independent of the owner, and to prevent any interference with the same by the latter. Nor does the provision in the mortgage clause for the subrogation of the defendant indicate that the owner's interest only was insured. The argument is, that if the mortgagees' interest was insured, no agreement as to subrogation was required, as the right existed as a matter of law. The answer to this position is, that the agreement must be taken as an entirety ; and inasmuch as a previous provision authorizes the conclusion that the interest of the mortgagees was intended to be insured, the addition of an unnecessary clause, by way of extraordinary caution, or for any other reason, cannot impair or nullify such provision. If it is valid and effectual without the subrogation clause, it was equally so with it, and its addition cannot destroy its validity, and whether the agreement be considered in reference to all its various provisions, or its different parts separately, the rights of the mortgagees remain the same.

There are, moreover, strong reasons for claiming that the insertion of the clause, in regard to subrogation, is evidence of an intention that the plaintiff should be exonerated from the application of the provision in the policy as to other insurance, and that the defendant should be protected by subrogation. By the latter provision, whenever the defendant paid the mortgagee any sum for loss, and claimed that as to the mortgagor or owner no liability existed therefor, the right to be subrogated was complete. If the full amount of the policy had been paid, and it exceeded the liability of the defendant to the owner, as was the fact if the right to contribution existed, then the defendant was fully protected by the mortgage clause. Such right would not have existed if the plaintiffs were within the provision as to other insurance, and hence it follows that it was the intention of the parties to restrict its operation, and to provide against its effect by a full and sufficient stipulation intered into for that express purpose. The contract is complete by placing such an interpretation upon its provisions,

and a contrary one would be adverse to its plain meaning and import.

The construction we have given to the contract of insurance in this case works substantial justice, and the plaintiffs thereby would only receive what actually belong to them, and if a deduction of four-fourteenths is made, as is claimed should be done, no way is pointed out, nor are we able to see how, the plaintiffs could obtain the balance.

The mortgagees cannot claim the benefit of a policy executed by the mortgagor, which has never been assigned, or in reference to which they have no connection. Policies of insurance are not deemed in their nature incident to the property insured, and do not cover any interest which another person may have in the property as heir, grantee, mortgagor or creditor, unless such other person has a valid assignment of the policy. (*Wyman* v. *Prosser*, 36 Barb., 368; *Carpenter* v. *Providence Wash. Ins. Co.*, 16 Peters, 495; *Columbia Ins. Co.* v. *Lawrence*, 10 id., 507, 512; *McDonald* v. *Black*, 20 Ohio, 185.)

The policy makes provision that the defendant shall only be liable for its proportion of the loss; but this cannot interfere with the rights of the mortgagees under the special contract with the company. It is not, therefore, important to consider whether under the right of subrogation, which exists in favor of the defendant, an action for contribution lies against the Lycoming Fire Insurance Company.

As the condition referred to was not intended and did not apply to the plaintiffs, it is not necessary to consider whether the word "property," as used therein, meant the interest of the mortgagees in the same.

The question of interest was properly disposed of. According to the terms of the policy the loss was payable sixty days after due notice and proofs furnished of the same. The interest, therefore, became due from that time.

The case of *Mayor* v. *Hamilton Fire Insurance Company* (39 N. Y., 45) was decided, and the terms used construed in

connection with the other conditions of the policy, and is not, we think, in point.

The judgment was right, and should be affirmed.

Rapallo, J.  By the terms of the mortgage clause attached to the policy the defendant agreed that the insurance, as to the interest of the mortgagee only, should not be invalidated by any act or neglect of the mortgagor or owner of the property insured, nor by the occupation of the premises for purposes more hazardous than were permitted by the policy.  But it was further agreed, in substance, that if the defendant should pay the mortgagee any loss, for which it would not be liable to the mortgagor, it should be subrogated to the rights of the mortgagee under all securities for the mortgage debt, or it might pay the amount due on the mortgage and take an assignment thereof.

I think that the intent of this clause was, that in case by reason of any act of the mortgagors or owners, the company should have a defense against any claim on their part for a loss, the policy should nevertheless protect the interest of the mortgagees, and operate as an independent insurance of that interest, and indemnify them against loss resulting from fire, without regard to the rights of the mortgagors under the policy ; and that, to effectuate that intention, we should hold that, as against the mortgagees, the defendant cannot set up any defense based upon any act or neglect of the mortgagors, whether committed before or after the issuing of the policy, or the making of the agreement between the company and the mortgagees.

To hold otherwise would, I think, defeat the purpose intended, and deprive the mortgagees of the protection upon which they had a right to rely.  Although the clause might be construed so as to exempt the mortgagees from the consequences only of acts of the owners done after the making of the agreement, I do not think, in view of its apparent purpose, that any such distinction was intended.  For instance, the clause provides that the insurance, as to the interest of

the mortgagees, shall not be invalidated by the occupation of the premises for purposes more hazardous than permitted by the policy. If the agreement is to be construed as protecting the mortgagees only against future acts of the mortgagors, they would be deprived of protection, if it so happened that, at the time of making the agreement, the premises were being occupied by the mortgagors for purposes not permitted, though the mortgagees were ignorant of the fact. The language of the clause does not require such an interpretation, and I do not think it consistent with its spirit and intent.

I think the intent of the clause was to make the policy operate as an insurance of the mortgagors and the mortgagees separately, and to give the mortgagees the same benefit as if they had taken out a separate policy, free from the conditions imposed upon the owners, making the mortgagees responsible only for their own acts. It established a privity between the company and the mortgagees, and provided that, notwithstanding that the insurance might be invalidated as to the mortgagors, it should, nevertheless, protect the mortgagees; and, as a consideration for this undertaking, it was stipulated that, in case the company should be called upon to pay the mortgagees, under circumstances which discharged it from liability to the mortgagors, it should be indemnified by subrogation, or an assignment of the mortgage and all securities held by the mortgagees for the mortgage debt. This provision, in case the policy were invalidated as to the mortgagors, made it, in substance, an insurance solely of the interest of the mortgagees, by direct contract with them, unaffected by any questions which might exist between the company and the mortgagors. The same consequences would follow, *pro tanto*, from a partial, as from an entire invalidation, or a reduction of the policy as to the mortgagors.

There having been in the present case no additional insurance upon the interest of the mortgagees, which should reduce their claim to one for contribution, I do not think

they are affected by the additional insurance on the interest of the mortgagors, even though it existed at the time of the issuing of the policy now in question, the mortgagees having been ignorant of, and having no interest in, such additional insurance.   For whatever amount the defendant may have to pay the plaintiffs in excess of the sum which the mortgagors could have collected on the policy, were there no mortgage, the company is entitled to reimbursement, by enforcing the bond and the mortgage, to which it is entitled by subrogation to that extent ; or it may pay them and take an assignment, in which case it would be bound to give credit thereon, only for its contributive share of the loss for which it is liable in respect of the interest of the mortgagors. If the security is insufficient to make the defendant whole for its excessive payment, that is no answer to the claim of the plaintiffs ; it is a loss resulting from the contract of the defendant with the mortgagees.

The mortgagors derive no benefit from the sum paid by the defendant in excess of its contributive proportion.   The mortgage debt is not reduced by that payment, but only to the extent of the contributive share for which the policy stood for the benefit of the mortgagors.   The mortgagors remain liable on their bond for the amount payable thereon beyond this contributive share, in case the company takes an assignment.   If the mortgaged premises should, on a foreclosure, prove insufficient to pay this excess, the mortgagors will be liable for the deficiency.   They have their claim against the Lycoming Insurance Company for its contributive share of the loss which is identical in amount with the excess which the defendant is obliged to pay the mortgagees. The Lycoming Insurance Company can claim no benefit from the payment by the defendant to the mortgagees.   Whether the defendant can, for its indemnity, have any recourse against the proceeds of the policy in the Lycoming Company is a question not involved in the present case.   The only question here is whether it can set up that insurance as against the claim of the mortgagees.

For the reasons stated I concur in the conclusion of my learned brother MILLER, J., that it cannot, and that the judgment should be affirmed.

All concur for affirmance, except ALLEN, FOLGER and ANDREWS, JJ., dissenting.

Judgment affirmed.