Hare *v.* Headley.

J. Montgomery Hare

*v.*

Albert O. Headley et al.

1. The claims of a fire insurance company, which paid insurance to a mortgagee, to a part of the proceeds of the mortgage sale, through subrogation to the rights of the mortgagee, are assignable.

2. Insured is the sole and unconditional owner of the insured property, notwithstanding he had previously mortgaged it.

3. Insured cannot be held to have forfeited his rights under the policy because not commencing suit on it within a year after loss, the insurer having within the time paid the whole loss to the mortgagee of insured; and this whether the payment be considered as made to him simply as the appointee of the owner, or by reason of an independent contract between the insurer and the mortgagee, that the rights of the latter, as mortgagee, to any insurance, should not be lost on account of any act or default of the insured.

4. Forfeiture of insured's rights by reason of his failure to give notice or proofs of loss as required by the policy, cannot be considered waived by the payment of loss to insurer's mortgagee. The insurer having, at the time of payment, claimed that no liability to the insured existed under the policy, and that, under the independent agreement of the insurer with the mortgagee, the insurer was entitled to subrogation to the mortgagee's rights under the mortgage.

5. An independent contract between the mortgagee of property, for whose benefit the owner insures it, and the insurer, that the insurance shall continue good as to the mortgagee, notwithstanding any forfeiture by the owner, and that if any loss is paid the mortgagee under such circumstances, the insurer shall be subrogated to the rights of the mortgagee under the mortgage, is valid, though the owner does not know of it.

On bill &c.

The principal question involved in this case is whether fire insurance companies, who have paid to a first mortgagee the loss to the mortgaged property occasioned by fire, are entitled to be subrogated therefor to the rights of the first mortgagee, or whether the second mortgagee is entitled to have the payment credited or applied as a payment on the first mortgage.

35

The complainant is the assignee of the fire insurance companies; the defendant Headley is the assignee of the second mortgage. The case is heard upon bill, answer of defendant Headley, replication and written state of facts agreed on, and, so far as relates to the question of subrogation now involved, the case in detail is as follows: The first mortgage, to secure $40,000, was given to the Mutual Life Insurance Company of New York, on March 21st, 1888, by Riley & Osborn, then the owners of the property mortgaged, and the mortgage contained the usual insurance clause, providing that the mortgagors should insure the buildings on the premises and assign the policies to the mortgagee as a further and collateral security for the payment of the debt, and on their failure so to insure, the mortgagees had the option to insure and any premiums paid by them, with interest thereon, were made a lien on the mortgaged premises, and to be secured by the mortgage.

On the same day (March 21st, 1888), Riley & Osborn executed a second and subsequent mortgage on the premises to one John H. Kase, for $8,000, being the mortgage afterwards assigned to the defendant Headley.

On January 25th, 1890, Riley & Osborn conveyed the mortgaged premises to Gabriel Schwab and others, partners trading as G. Schwab & Brothers, and on or about March 1st, 1891, these owners insured the property for the total amount of $30,000 in seven different fire insurance companies, the insurances to run from March 1st, 1891, to March 1st, 1892 (except the California Insurance Company policy for $3,010, which ran from March 28th, 1891, to March 28th, 1892), and in each policy was written, "Loss, if any, payable to Mutual Life Insurance Company of New York, mortgagee." On the policy issued by the Phœnix Assurance Company, this endorsement was made April 11th, 1891. On all the other policies the endorsement, for all that appears, was made on issuing the policies. Each of the policies was in the form known as the standard fire insurance policy of the State of New York, and contained (among others) the following conditions and provisions avoiding the policies by reason of acts, omissions or defaults of the insured:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void, if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed, or if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by voluntary act of the insured or otherwise."

In relation to acts of the insured after the fire, there were conditions that "if fire occur, the insured shall give immediate notice of loss in writing to the company," and should within sixty days after the fire render proofs of loss, with the further provisions that the company should not be held to have waived any provision or condition of the policy or any forfeiture of it, by any act or proceeding on its part relating to the appraisal or examination as to loss provided for by the policy; and that

"no suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months after the fire."

These policies did not contain the clause known in insurance as the mortgage clause, but at the time of the delivery of these policies to the Mutual Life Insurance Company as collateral, this company had in force, with each of the insurance companies, an existing independent contract, giving it the benefit of the mortgage clause, the form of the agreement being as follows:

"In consideration of One Dollar, by each of the parties hereto to the other in hand paid, the receipt of which is hereby acknowledged, and for other valuable considerations, the Mutual Life Insurance Company of New York, party hereto of the first part, and ....................................., party hereto of the second part, hereby mutually covenant and agree as follows:

· "That all Policies of Fire Insurance issued by the said party hereto of the second part, which are or may be assigned to or held by the party hereto of the first part aforesaid as Mortgagees, shall have written upon or attached or appended thereto the following clause, which it is hereby agreed is necessary to clearly express all the facts and conditions of Insurance on each particular risk covered by said Policies of Insurance respectively, the said clause being as follows:

Hare *v.* Headley.

"*Mortgage Clause.*—Loss or Damage, if any, under this Policy shall be payable to the Mutual Life Insurance Company of New York, as Mortgagee, as interest may appear, and the interest of the said Mortgagee shall be considered absolutely insured and subject to no plea in bar of its right to recover from this Company, under this Policy, such sum or sums of money as shall save the said Mortgagee from loss in consequence of any fire which may happen, except such loss as may take place by means of any invasion, insurrection, riot or civil commotion, or of any military or usurped power, and shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title, occupation or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this Policy ; *provided,* that in case the Mortgagor or owner shall neglect to pay any premium due under this Policy, the Mortgagee shall, on demand, pay the same.

"It is agreed that the Mortgagee shall notify this Company of any change of ownership (other than transfer of the Title to itself), or occupancy or increase of hazard which shall come to the knowledge of said Mortgagee, and unless permitted by this policy, it shall be noted thereon, and the Mortgagee shall, on demand, pay the additional premium for such increased hazard for the term of the use thereof.

"Whenever this Company shall pay the Mortgagee any sum for loss or damage under this Policy, and shall claim that, as to the Mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the Mortgage debt, or may at its option, pay to the Mortgagee the whole principal due or to grow due on the Mortgage with interest, and shall thereupon receive a full assignment and transfer of the Mortgage, and of all such other securities but no subrogation shall impair the right of the Mortgagee to recover the full amount of its claim.

"Dated ..............................................

"Attached to and forming part of Policy No. .........

                               " (Signature of Company.)

"And it is further agreed that in the event that the said clause should by oversight or neglect, be not written upon, attached or appended to any one of said Policies of Insurance, that the rights of the parties hereto under said Policy of Insurance shall be determined, established and settled with like force and effect as if their intention to write upon, attach or append the clause aforesaid to said Policy of Insurance had been fully carried out and effectuated.

"In witness whereof, the parties hereto, by their duly authorized officers, ...................................................................., have executed this agreement upon this ...... day of .............., in the year one thousand eight hundred and ninety-four."

The existence of this independent contract between the mort-
gagee and the insurance companies was not known to Schwab &
Company, or to the defendant Headley, or to the owners.  On
November 28th, 1891, a portion of the buildings was destroyed
by fire.  The insured did not give any notice of loss thereby to
the fire companies or either of them, nor within sixty days, or
ever, render proofs of loss or statements to the fire companies,
as required by the policies.  Previous to the fire, and in March,
1891, while all the policies were running, four writs of attach-
ment were issued against G. Schwab & Brothers, under and by
virtue of each of which the sheriff of the county of Essex
attached the insured property, and all of these attachments were,
at the time of the fire, outstanding and pending.  On May 9th,
1891, a bill to foreclose its mortgage was filed by the Mutual
Life Insurance Company, in this court, to which suit Schwab &
Brothers were made parties defendant and were brought in by
publication and the usual notice to absent defendants, which was
mailed to them at their correct address in New York city.  On
February 9th, 1892, and more than sixty days after the fire, the
Mutual Life Insurance Company, as mortgagee, entered into an
adjustment with the several fire companies, submitting the
amount of the loss to appraisers, who, on March 9th, 1892,
appraised the loss at $6,114.64, and on July 15th, 1892, the
several companies paid this award to the mortgagee.  In the ap-
praisement and the settlement which was entered into and made
by the fire companies with the Mutual Life Insurance Com-
pany, as mortgagee, the fire companies claimed to the mortgagee
that as to the mortgagors or owners of the property, no liability
under the policies existed, and that under their independent
agreements with the Mutual Life Insurance Company, they were
entitled to subrogation to its rights as mortgagee under the mort-
gage.  No assignment, however, was made by the Mutual Life
Insurance Company to the fire companies, at the time of the
payment, or at any time, of any of its rights.

The above statement gives substantially, I believe, the facts
which are material to the decision of the main question in-
volved—the right of the fire insurance companies to subrogation.

But a question is also raised, whether in this present contest (which in form arises over the disposition of surplus money in the foreclosure suit), the money which has been paid to the life insurance company must not be considered as actually credited by it on the mortgage debt, and whether the fire companies are not thereby remitted altogether to their remedy on the contract with the life insurance company.

For a decision of this question, a reference to the proceedings in the foreclosure suit is essential. The final decree in the foreclosure suit was made January 27th, 1892, more than sixty days after the fire, and before any adjustment of loss. This decree, and the execution thereon, which was issued February 9th, 1892, directed that the mortgaged premises be sold to pay, in the first place, complainant's decree, $44,762.74, with interest from October 30th, 1891, besides costs; and, in the second place, decree for defendant Kase for $8,520, with interest from the same date, and execution was delivered to the sheriff on February 10th, 1892. After receiving payment of the sum of $6,114 from the fire companies in July, 1892, as above stated, the life insurance company, without making any credit on its execution, proceeded to a sale of the premises as if the whole amount thereof was due, and on August 23d, 1892, the property was sold for $45,100 to the complainant in this case, who, on the 22d day of August, 1892, the day previous to the sale, had received from the fire insurance companies assignments of their interests in the bond, mortgage, decree and execution, and moneys due or to grow due thereon. On August 27th, 1892, this sale was reported to the chancellor for confirmation, and on September 6th, 1892, the sale was confirmed, and the sheriff directed to execute a conveyance. On September 8th, 1892, and before the deed had been delivered by the sheriff, the defendant Headley filed a petition claiming that the payment by the fire companies to the life insurance company, after the decree, operated as a payment on the decree for its benefit, and reduced the decree to less than $42,000; and stating, also, that the fire insurance companies insisted that the life insurance company should take from the sheriff the whole proceeds of sale and pay back to the fire insur-

ance companies the surplus over and above the amount due the life insurance company after crediting the payment, and that the fire insurance companies had notified the sheriff to pay the whole proceeds of sale to the complainants, or else to pay over the surplus to them. Headley claimed the surplus, and so notified the sheriff. On this petition, and without any notice, so far as appears, to either the life insurance company or the fire companies, or the purchaser, an order was made on the same day (September 8th, 1892) directing that, pending proceedings to ascertain what disposition should be made of the surplus moneys, the sheriff should pay into court any surplus in his hands over and above the amount of complainant's decree, with interest, costs and sheriff's fees, after deducting the sum of $6,114, appearing to have been paid to complainant since issuing execution, and $14.57 interest thereon. Pursuant to this order the sheriff paid into court $3,484.02, and on January 31st, 1893, the complainant in this case, as assignee of the fire insurance companies, filed a petition, praying to be admitted as a party, either complainant or defendant, in the foreclosure suit for the purpose of obtaining the surplus money, but after hearing before Vice-Chancellor Green this application was denied, as raising questions which should be determined upon formal bill. The bill in this cause was thereupon filed by the present complainant, for the purpose of obtaining by decree in this suit payment to it of the money directed to be paid into court, by the order in the foreclosure suit, to which it was not, and by order of the court could not, become a party, either as complainant or defendant. Upon the argument, two preliminary questions raised by defendant are— *first*, that the claim of the fire companies is not assignable, and that the complainant, therefore, has no standing in court; and, *second*, that the Mutual Life Insurance Company in fact credited the money received from the fire insurance companies on the decree as a payment, and the defendant Headley is entitled to the benefit of that credit, and, if the credit was made in violation of the contract between the life insurance company and the fire companies, the latter must look to the life insurance company for reimbursement.

*Mr. Edward A. Day* and *Mr. James S. Stearns* (of the New York bar), for the complainant.

*Mr. Edward Q. Keasbey* and *Mr. J. Frank Fort*, for the defendant Headley.

EMERY, V. C. (after stating the facts).

On the above facts I reach the following conclusions:

*First.* As to the assignment of the claim of the fire insurance companies to complainant, I can see no objection to its validity, nor have counsel referred me to any authority calling in question the assignability of a chose in action of this character.

*Second.* The claim of defendant that the money received by the life insurance company for the insurance was credited on the decree, does not seem to be well founded in point of fact. Since the point was raised at the argument, I have examined the record and proceedings in the foreclosure suit which were offered in evidence, and this record plainly shows that no credit of the insurance money was made upon the decree by the life insurance company, but that on Headley's application, and without notice to the fire insurance companies or complainant, the credit was made by order of the court, in order that the dispute between Headley and the complainant might be settled on the application for surplus money. The complainant is certainly entitled, under these circumstances, to raise the question as to his right to subrogation, and has not been deprived of it by any act of the life insurance company.

*Third.* As to the main question in the cause—the complainant's right to subrogation—this must clearly rest, as it seems to me, upon the establishment of two propositions—*first*, that as between the fire insurance companies and the owner insured, the policies were in fact void, by reason of acts or neglects of the mortgagor or owner which avoided the policy; and *second*, that an agreement between the fire insurance companies and the mortgagee, providing for the payment of loss to the mortgagee in case of such invalidation of the policy by act of the owner, is valid, although not incorporated within the policy itself but is an in-

Hare v. Headley.

dependent existing agreement, becoming applicable to all policies as they are assigned to the mortgagee.

The defendant disputes both of these propositions and also claims that as to the alleged forfeiture by the acts and neglect of the owner, these were waived by the adjustment and payment of the loss to the mortgagee as the appointee of the owner under the policy. The question of forfeiture is one of fact, and several acts of forfeiture are relied on by complainant at the argument, one of the grounds alleged in the bill not being pressed. This was the claim that the insured were not the unconditional owners of the insured property, by reason of conveyances previously made to one Domenick and F. Butterfield. & Company. These deeds, on their face, were clearly mortgages, and, under the doctrine settled in *Carson* v. *Jersey City Insurance Co., 14 Vr. 300* (*New Jersey Supreme Court, 1881*), and other cases cited, were no violations of the condition in question. The forfeitures relied on as against the owner are—(1) the seizures and levies on the property under the attachments; (2) the commencement of foreclosure proceedings with knowledge of the insured; (3) the failure of the owners to give immediate notice of the loss, or to give any notice thereof; (4) their failure to render statements or proofs of loss within sixty days, and (5) the failure to commence suit on the policy within twelve months. There is no basis for this last claim, as it appears to me, because the whole loss secured by the policy having been in fact paid within the twelve months to the mortgagee, there could be no other recovery by the owner on the policy if suit were brought. This results from the mere fact of payment, and is the case whether the payment made to the mortgagee be considered as made to him simply as appointee of the owner, under a policy in force in favor of the owner, or as a payment in favor of the mortgagee only, made under the independent contracts.

As to the other alleged forfeitures, my view is that the seizures and levies under the attachments were a change in the interest of the insured in the insured property, by legal process, within the terms of the policy.

In relation to the second ground of forfeiture relied on, the

owner's knowledge of the commencement of foreclosure proceedings, the facts relied on to prove such knowledge are that prior to the commencement of the suit the solicitor of the mortgagee mailed a notice to the owners that the suit would be commenced unless interest was paid, and that the notices to absent defendants were mailed to them to the correct address in New York city. No direct proof is made of receipt of the letters by the owners, nor, on the other hand, has any proof been made by the defendant that the letters were not received. The question on this point, therefore, is, whether the general rule of evidence that a letter properly mailed is presumed to have reached its destination at the proper time and to have been received by the person to whom it was addressed, is applicable to a case where, if presumed to have been received, the effect will or may be to result in a forfeiture. That courts construe strictly statutes, contracts and other sources of obligations, where the forfeiture of rights under them depends upon construction, is and always has been the undoubted rule, but the question here relates to the rule of evidence and not of construction, and is whether a rule of evidence, generally applicable in relation to the *prima facie* proof of a fact, is made inapplicable by reason of the effect on property rights of the operation of the rule. The weight of authority is that the rule of evidence must operate without regard to the contents of the letter or its effect. *Rosenthal* v. *Walker, 111 U. S. 185, 193, 194,* and cases cited.

I am inclined to adopt this view, supported as it is by another consideration, viz., that the method of mailing notices of foreclosure to absent defendants at their post-office addresses, having been adopted and enforced by the legislature and the courts as a method of fulfilling the obligation to give the notice necessary in every judicial proceeding, such method, in view of its continued public recognition for such purposes, must be considered as sufficient *prima facie* proof that the notice required by law accomplished the object of the law and was received. But the determination of this question is not necessary for the decision of this cause, for, in my opinion, there are two remaining causes of forfeiture which are made out as against the owner, and these

Hare v. Headley.

are his failure to give notice of the loss and the failure to render proofs, as required by the policy. Such failure, if not waived by the company, avoids the policy. *Dwelling-House Insurance Co.* v. *Snyder, 34 Atl. Rep. 931 (New Jersey Supreme Court, June, 1896).*

The defendants, not controverting these failures of the owner to comply with the conditions of the policy, rely upon the subsequent adjustment and payment of loss to the mortgagee as a waiver of these failures. This contention is not well founded, because this payment, under the circumstances of this case and in view of the contract existing between the companies and the mortgagee, must be taken as made by the companies under the claim that they were satisfying an obligation to pay the mortgagee which existed after the obligation to pay the owner ceased. Such payment so made to the mortgagee, who held this additional contract for payment, cannot be held as intended by the companies to be a payment in waiver of the owner's violation. Waiver as between persons entitled to insist on the performance of conditions ultimately depends on the intention of the parties, and if the act relied on as indicating the intention is referable to other causes or reasons than a waiver of a right, it should not be construed to be such waiver.

The contention of defendant on this point, if valid, would of necessity make the mortgage clause nugatory, for the main object of this clause is to provide for a continuance of the policy as to the mortgagee, when it has been avoided by the neglect of the owner, and for a payment to the mortgagee after such avoidance as to the owner. To treat the payments made or claimed to be made under this mortgage clause, and while the company deny the obligation to the owner, as having the effect of reinstating the policy in favor of the owner, under the theory of waiver, is to hold that the mortgage clause cannot practically be carried out as against the owner. I conclude, therefore, that the policies were void as between the owner and the fire companies, and the next question is whether a payment of the loss to the mortgagee, who has been appointed by the owner to recover the loss, if made after the policy is void as against the

Hare *v.* Headley.

owner, operates to the benefit of the owner and his subsequent mortgagees. This depends upon the question whether the contract between the mortgagee and the companies is valid as against the owner, or whether the payment, although voluntarily made, so far as the owner is concerned, must, when received by the mortgagee, be credited upon the debt which the policy was assigned to secure. If there were no mortgage clause, either in the policy or independent, and the fire insurance companies were under no other obligation to the mortgagee than to the owner, then such payment made to the mortgagee would, as it seems to me, clearly operate for the benefit of the owner, and the mortgagee would hold the money received for insurance in trust to apply it to the debt.

The question, therefore, as I view this part of the case, is narrowed down to the simple one, whether the contracts in this case, independent of the policies and unknown to the owner, are, as against him, valid contracts, payments under which are to be considered as payments made to the mortgagee, not under his appointment by the owner, but as made to it in an independent right with which the owner was not concerned.

Mortgage clauses, so called, continuing the insurance covered by a policy, in favor of a mortgagee, where they are void as to the owner or mortgagor by reason of his acts or defaults, have for many years been used and acted on in connection with policies, and where the clause is either incorporated in the policy itself, or otherwise attached by the consent of all parties (owner, mortgagee and insurance companies), no plausible ground can be urged against their validity, and the uniform opinion of the courts has sustained them. The reason is that the interest and relations of the mortgagee and of the owner, to the insured property, are, in some respects and to a certain extent, so distinct that the parties being competent to make the contract may provide that the policy may be good to the mortgagee, although not to the owner. *Hastings* v. *Insurance Co., 73 N. Y. 141 (1878),* an earliest and leading case. *Allen* v. *Watertown Fire Insurance Co., 132 Mass. 480 (1882)*; *Syndicate Insurance Co.* v. *Bolm, 65 Fed. Rep. 165, 172 &c. (U. S. Circuit Court of Ap-*

Hare v. Headley.

*peals, 8th case, 1894).* The validity of such clause, if included in the policy, was assumed in a late case in the supreme court. *Kase* v. *Hartford Fire Insurance Co., 29 Vr. 34.*

*Davis* v. *Insurance Co., 135 Mass. 251,* the only case cited by counsel as questioning the validity of such clauses, does not have this effect and could not have been so intended, for it does not overrule or even call in question the previous direct decision in *Allen* v. *Watertown Insurance Co., supra,* expressly sustaining them. The objection pressed here against the validity of such an agreement between the mortgagee and the insurance company, is that it was not contained in the policy, but was a secret agreement of which the owner is ignorant, providing for the continuance of the policy in the mortgagee's favor, after it has become invalid in favor of the mortgagor or owner by reason of his defaults. The validity of such independent contract between the mortgagee and insurance companies, existing at the time of the issuing of the policy, was expressly sustained in *Ulster County Savings Institution* v. *Leake, 73 N. Y. 161 (1878),* upon grounds which, as it seems to me, are solid and unquestionable. " The contract," says Chief-Justice Church (at *p. 165*), " does not affect or purport to interfere with rights of any mortgagor who may procure or for whose benefit an insurance may be procured. It merely provides for protecting the interest of the mortgagee after the interest of the mortgagor has ceased, and I am unable to perceive any valid reason why such a contract may not be made and enforced ; " and again (at *p. 166*) : " The mortgagor was not injured by this contract. If it had not been made she could not have received any benefit from the policy. It was an independent contract for the benefit of the mortgagee and the circumstance that the mortgagor also had a policy does not affect it when the contingency rendering it operative occurs." These reasons, in my judgment, control this case. Defendants' counsel insist that the owner is harmed, inasmuch as the expense of the insurance is borne by him. But his insurance premium is paid for his own insurance, under his own contract as to terms, conditions &c., and his bargain with the mortgagee for payment of insurance only binds him to continue the

insurance of his own interest and under his own contract. So long as the owner has all the interest in the insurance policy which he has contracted and paid for, it is difficult to see how he can be said to suffer any legal harm because the premium which he has paid does not give him the benefit of an additional insurance obtained by the mortgagee, to take effect after his interest has terminated. For this additional insurance, the mortgage has, in this case, given additional consideration, viz., its own personal obligation to the insurance company to pay the premiums on demand if the mortgagor did not. I conclude, therefore, that the contract is valid, so far as relates to the independent insurance of the mortgagee after the policy had become forfeited as against the owner by reason of their failure to give notice of loss, or to make proofs of loss, as required by the policy, and that the payments of loss having been made by the fire insurance company in satisfaction of the mortgagee's separate insurance of his interest under the independent contracts, the insurance companies are entitled, by reason of such payments, to be subrogated to the mortgagee's interests in the security, and that the subsequent mortgagee claiming under the owner is not entitled to have the payments credited on the decree. It was claimed by complainant's counsel that the right to subrogation arose under the contract by mere claim of non-liability as to the owner. The contract does, indeed, so provide in terms, and, although it might, therefore, be good against the owner, if included in the policy or entered into by him, it clearly can have no effect on his rights, or of those claiming under him, when made between other parties. As to the owner, in such case subrogation can arise only as a right given by law, upon facts proved, and the forfeiture in fact of the policy as against him is the legal prerequisite to any independent insurance of the mortgage under this contract, and must be proved as one of the issues in the cause, which the owner and those claiming under him may require to be proved. If the policy was not in fact forfeited as to the owner at the time of the payment, then the payment to the mortgagee must be considered as a payment to the mortgagee as appointee of the owner, and not

under the independent contract, and the owner would be entitled to have the payment credited on the mortgage debt.

Complainant is entitled to decree for payment of the surplus money to him, with costs against the defendant Headley.