# 556

## FARWELL v. JOHNSON.

ARTHUR M. FARWELL, Plaintiff,. v. JOHN JOHNSON, as Trustee of the Bankrupt Estate of JOHN D. LAPHAM and DENNIS C. SAWYER and Others, Defendant.

Supreme Court, Cattaraugus County, October, 1923.

Insurance (fire) — want of insurable interest can only be raised by insurance companies — agreement to give a lien upon property, when obtained, enforcible in equity — sale of personal property — stock of purchaser insured against fire in favor of seller — bankruptcy of purchaser — right of seller to insurance moneys to the extent of the unpaid purchase price — Insurance Law, § 55.

While a party cannot mortgage property which he does not have he may agree to give a lien upon it as soon as he gets it and equity will enforce the agreement and establish the lien.

In 1919 plaintiff sold and delivered a stock of merchandise to a firm of retail merchants for $12,500 of which $2,000 was paid in cash, the balance being represented by the promissory note of the buyers, payable to the order of plaintiff. The terms of the sale were not reduced to writing but the testimony established that the buyers agreed with plaintiff that the stock should be insured against loss by fire and in the event of a fire loss that the insurance money should be payable to plaintiff as his interest might appear at the time of a possible fire. *Held*, that plaintiff having sold the merchandise no interest therein was retained by him and he had no lien for the unpaid purchase price; that if the agreement meant anything it was that the insurance moneys should be payable to plaintiff to the extent of the unpaid purchase price, at the time of a possible fire.

The avails of sales of the merchandise so sold by plaintiff to said retail merchants were used by them in the purchase of new stock and on November 23, 1921, when a fire destroyed the merchandise which they had caused to be insured in the joint names of themselves and plaintiff, all of the original stock of merchandise purchased in 1919 had been sold excepting about $400 worth and new stock of the value of $24,000 had been added. At the time of the fire the unpaid balance of the purchase price was represented by a note of the buyers for $7,000 which three days after the fire was renewed by a new note for $7,105 payable in two months, and shortly thereafter the insurance loss was adjusted at $13,000 and drafts therefor payable to plaintiff and the firm of buyers were forwarded by the insurance company to their local agents for delivery to the payees upon execution of receipts and surrender of policies. Before the delivery of the drafts to the payees and in January, 1922, the buyers were adjudicated voluntary bankrupts and the sum of $6,000 of the insurance money was paid to the trustee in bankruptcy and the balance thereof deposited to await the determination of an action brought against the trustee in bankruptcy to establish and enforce a lien upon said amount in plaintiff's behalf. Upon granting a judgment establishing plaintiff's lien upon the money on deposit and awarding him title thereto with direction to the depository to pay the same together with all accumulations thereon to plaintiff, *held*, only the insurance companies could raise the objection of the want of insurab e interest and whether the agreement and policies of insurance created a legal obligation in plaintiff's favor against the insurance companies was not material here.

The prohibition in section 55 of the Insurance Law against the issuing of a policy upon property except in the name of some person having an interest therein did not prohibit the issuing of the policy here in question.

The insurance for plaintiff's benefit having been effected under the terms of a legal agreement which the bankrupts had a perfect right to make as a part of the sale to them by plaintiff, their general creditors had no superior equities to the insurance money over the plaintiff, and the payment of the fund through the issuance of the draft was in recognition of a right of plaintiff created long before the bankruptcy.

ACTION to establish and enforce a lien upon avails of fire insurance policies.

*William W. Waring,* for plaintiff.

*Frank James,* for defendant.

BROWN, J.   On August 1, 1919, plaintiff sold and delivered to John D. Lapham and Dennis C. Sawyer, as copartners doing business as Lapham & Sawyer, a stock of merchandise and fixtures situate in a store building in Rushford, N. Y., in consideration of the sum of $12,500, $2,000 of which was then paid, $10,500 to be paid in the future, represented by Lapham & Sawyer's promissory note payable to the order of the plaintiff, and in the further consideration that Lapham & Sawyer should procure such property to be insured against loss by fire payable to the plaintiff as his interest might appear at the time of a possible fire.   Thereafter Lapham & Sawyer conducted a general store selling such merchandise by retail, and adding to the stock of merchandise from time to time.   On November 23, 1921, all of the original stock of merchandise purchased August 1, 1919, had been sold excepting about $400 worth of merchandise and new stock had been added of the value of about $24,000.   The avails of sales of the merchandise sold by plaintiff were used in the purchase of such new stock.   Payments had been made upon the promissory note of upwards of $3,500, and on November 23, 1921, the unpaid balance due plaintiff was represented by a promissory note of Lapham & Sawyer of $7,000. Lapham & Sawyer in 1919, 1920 and 1921 procured policies of insurance to be issued by several insurance companies insuring their stock of merchandise against loss by fire aggregating $13,000, all policies insuring and payable to " A. M. Farwell — Lapham & Sawyer."   On November 24, 1921, a fire occurred destroying all of the insured merchandise.   On November 27, 1921, the $7,000 note was renewed by a new note for $7,105 payable in two months. Shortly thereafter the insurance loss was adjusted at the sum of $13,000 and drafts for that amount were delivered by the insurance companies to their local agent all payable to A. M. Farwell — Lapham & Sawyer, to be delivered to the payees upon execution

of receipts and surrender of policies. During the delay of the delivery of the drafts to the plaintiff and Lapham & Sawyer and on January 27, 1922, Lapham & Sawyer were duly adjudicated voluntary bankrupts and the defendant duly appointed trustee of their estate. Thereafter the sum of $13,000 was realized upon the drafts, $7,000 thereof deposited to await the determination of plaintiff's claim and the balance paid to defendant trustee. This action is brought to establish and enforce a lien in plaintiff's behalf upon the moneys on deposit. The claim of the plaintiff is that in consideration of the sale to Lapham & Sawyer in 1919 they procured the property to be insured against loss by fire; that the insurance moneys were to be paid to the plaintiff to the extent of the unpaid purchase price of the property sold, and that such agreement made in 1919 impresses upon the avails of the policies a lien in the sum of $7,000 ahead of and superior to the claim of the trustee of the bankrupt estate. The defendant contends that as title to the merchandise passed to Lapham & Sawyer, the plaintiff had no insurable interest therein; that the policies were void as to the plaintiff and that the insurance moneys belong solely to the trustee in bankruptcy; that the making of the drafts to the order of the plaintiff and Lapham & Sawyer, thus paying the insurance moneys to the plaintiff, was the creation of a preference in plaintiff's behalf over the general creditors of Lapham & Sawyer within four months prior to the adjudication in bankruptcy and cannot be upheld under the Bankruptcy Act.

The right of the plaintiff to the funds on deposit can only be determined primarily upon an interpretation of the agreement made in 1919 between plaintiff and Lapham & Sawyer relative to the insurance to be placed on the merchandise then sold. The terms of the agreement were not reduced to writing and can only be ascertained by an inspection of the testimony. The plaintiff testifies that it was stated at the time of the sale " That the stock should be insured payable to me as my interest might appear at the time of possible fire." One witness testifies that " Mr. Farwell said he wanted the stock insured in case of fire and Lapham agreed to it." Mr. Lapham was not called as a witness. Upon this testimony it is apparent that Lapham & Sawyer agreed with plaintiff that the stock should be insured against loss by fire and in the event that there should be a fire loss that the insurance moneys should be payable to the plaintiff as his interest might appear at the time of possible fire. What is the meaning of such agreement? Plaintiff had sold the stock of merchandise to Lapham & Sawyer; no interest in the merchandise was retained by the plaintiff. He had no lien upon the merchandise for the unpaid

purchase price. It is certain that the agreement does not mean that the insurance moneys should be paid to the plaintiff as his interest in the merchandise might appear at the time of possible fire. If it means anything it means that the insurance moneys should be payable to the plaintiff to the extent of the purchase price of the merchandise in 1919 that should remain unpaid at the time of a possible fire. It is very evident that the parties intended that plaintiff should have some interest in the insurance moneys; some lien thereon as security for his debt. There could have been no other object in naming the plaintiff in the policies of insurance. Lapham & Sawyer caused plaintiff's name to be inserted in the policies as a joint payee with themselves of the insurance moneys in the event of a fire loss. There was some purpose in so naming the plaintiff in the policies. Twenty-one separate fire insurance policies were procured by Lapham & Sawyer from five different insurance companies in three years, in all of which loss, if any, was made payable to the plaintiff and Lapham & Sawyer. The insurance companies made no claim that plaintiff did not have an insurable interest in the insured property. They all concede that the insurance moneys were payable to the plaintiff and Lapham & Sawyer. In fact they each have made payment of the total loss by issuing drafts payable to plaintiff and Lapham & Sawyer. In view of the testimony stating the terms of the agreement, the facts and circumstances relative to the insurance and the way and manner in which the parties have treated the same the finding must be that in 1919 at the time of the sale of the merchandise by the plaintiff to Lapham & Sawyer it was agreed between them that the stock of merchandise of Lapham & Sawyer should be insured against loss by fire, the insurance moneys be payable to the plaintiff to the amount of the unpaid purchase price of the merchandise in 1919, that should remain unpaid at the time of a possible fire; that Lapham & Sawyer have performed all of the conditions of that agreement which they were required to perform. The execution of that agreement by Lapham & Sawyer in procuring the insurance companies to issue their drafts in payment of the fire loss payable to the plaintiff and themselves is asserted by the defendant to have been the transfer of insurance moneys belonging to Lapham & Sawyer to the plaintiff operating as a preference in plaintiff's behalf over the general creditors of Lapham & Sawyer within four months prior to the adjudication in bankruptcy and void under the Bankrupt Act. The agreement was made in 1919, and plaintiff's right to the insurance moneys was then created; the act of the insurance companies in paying the moneys to the plaintiff through the issuance of the drafts was

in recognition of a right of plaintiff that had been created long before the bankruptcy, and it is not seen how the Bankrupt Act in any manner applies, provided the agreement was valid and enforcible as between plaintiff and Lapham & Sawyer. Whether such agreement and the policies issued by the several insurance companies created a legal obligation in plaintiff's favor as against the insurance companies does not seem to be material upon the question presented. Only the insurance company can raise the objection of the want of insurable interest. *Matter of Stucky Trucking Co.*, 240 Fed. Rep. 427. Section 55 of the Insurance Law, prohibiting the issuing of a policy upon property except in the name of some person having an interest in the property, did not prohibit the issuing of the policies to Lapham & Sawyer and adding the name of the plaintiff as one to whom insurance moneys should be paid jointly with Lapham & Sawyer. The policies were issued in the name of some person having an interest in the property. It was said in *Van Alstyne* v. *Ætna Insurance Co.*, 14 Hun, 360: " It is unnecessary that the party who is specified as the person to whom the loss, if any, is to be paid should have any insurable interest in the property insured, or that, if he has such interest, the insurance company should be notified of the fact. There is nothing to prevent the assured from ordering the loss, if any, to be paid to the party to whom it is directed to be paid on any other account than that of an interest in the property insured."

It was said in *Hastings* v. *Westchester Fire Ins. Co.*, 73 N. Y. 141, 149: " In case the loss is payable to a third person, who has no insurable interest in the property insured, but only claims the insurance as collateral security for liabilities incurred prior to the insurance the latter only can maintain an action on the policy as an appointee of the owner who is authorized to receive the same," citing *Frank* v. *Hampden Ins. Co.*, 45 Barb. 384.

In *Frank* v. *Hampden Ins. Co.*, *supra,* the policy issued upon property owned by H. provided loss if any should be " payable to F. as collateral." H. was indebted to F. at the time. It was held that F. could maintain the action, although having no insurable interest; he was the appointee of H. to whom the money was payable.

In view of the fact that the insurance companies have paid the fire loss and that the insurance money claimed by the plaintiff is now on deposit, and its title is freed from all controversy as to the liability of the insurance companies, the question as to whether the plaintiff had an insurable interest in the lost merchandise is entirely immaterial. The sole question seems to be whether the agreement made in 1919 between plaintiff and Lapham & Sawyer relative to the insurance moneys was valid and enforci-

ble; whether the fund on deposit is the plaintiff's property free from the claims of defendant trustee representing the general creditors of Lapham & Sawyer.

It is stated in 26 Corpus Juris, 445, that a creditor of an insured to whom the policy is made payable is entitled to the proceeds and is not bound to apply them to the benefit of the debtor.

Under the terms of the agreement the insurance was effected for plaintiff's benefit and security. It was a legal agreement founded on adequate consideration. Lapham & Sawyer had a perfect right to make the same. It was a part of the terms of sale by plaintiff to Lapham & Sawyer. The general creditors have no superior equities to the insurance fund over the plaintiff. The property that was destroyed by the fire consisted partly of merchandise that had been sold by the general creditors to a solvent copartnership that had not been paid for, and partly of merchandise that had been purchased with funds realized from sales of merchandise formerly owned by plaintiff that had not been paid for. The testimony is that all avails of plaintiff's merchandise had been reinvested in the stock in the store. The moneys that paid the premiums for the insurance came from sales of plaintiff's merchandise that had not been paid for, as well as from sales of merchandise purchased from the general creditors.

In *Sexton* v. *Kessler*, 225 U. S. 90, it was held that a delivery of securities in 1907 by a bankrupt less than four months prior to the adjudication was not prohibited as a preference under the Bankrupt Act for the reason that the agreement for such delivery was made in 1903; that when the defendant took possession of the securities in 1907 it only exercised a right that had been created in 1903 long before the bankruptcy.

A party cannot mortgage property which he does not have, but he can agree to mortgage it or give a lien upon it as soon as he gets it, and equity will enforce the agreement and establish the lien. Where the intent is to give a lien, and what is done is consistent with its creation and not a contract for something else, equity will treat as done what was intended to be done, and the lien may be established and foreclosed in the same action *National Bank* v. *Rogers*, 166 N. Y. 381, 390.

The plaintiff is entitled to judgment establishing his lien upon the money on deposit, awarding him the title thereto and directing the depository to pay the same together with all accumulation thereon to him, together with costs.

Let findings be prepared.

Judgment accordingly.